

FILED

Sep 28 2016, 5:30 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANTS

Linda George
Kathleen A. Farinas
Todd Barnes
Sarah Broderick
George & Farinas, LLP
Indianapolis, Indiana

ATTORNEYS FOR AMICUS CURIAE
INDIANA TRIAL LAWYERS ASSOCIATION

Jeffrey A. Hammond
Cohen & Malad, LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
BREMEN CASTING, INC.

Keith D. Mundrick
Susan E. Mehringer
Dennis F. Cantrell
Cantrell Strenski & Mehringer, LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
MASTIC HOME EXTERIORS, INC.

John McCauley
Meaghan Klem Haller
Greg Neibarger
Bingham Greenebaum Doll, LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Larry Myers and Loa Myers, <br> *Appellants-Plaintiffs,* <br><br> v. <br><br> Bremen Casting, Inc., and <br> Mastic Home Exteriors, Inc., <br> *Appellees-Defendants.* | September 28, 2016 <br><br> Court of Appeals Case No. <br> 49A04-1503-MI-113 <br><br> Appeal from the Marion Superior <br> Court <br><br> The Honorable Timothy W. Oakes, <br> Judge <br><br> Trial Court Cause No. <br> 49D02-1405-MI-14372 |

**Robb, Judge.**

# Case Summary and Issue

[1] Larry Myers spent the majority of his career working as an electrician in primarily industrial and commercial spaces, and during this time, Larry was exposed to asbestos. In February 2014, doctors diagnosed Larry with mesothelioma. Thereafter, Larry and his wife, Loa, filed a complaint alleging negligence against numerous product manufacturers and premises owners, including Bremen Casting, Inc. ("Bremen") and Mastic Home Exteriors, Inc. ("Mastic") (collectively, the "Defendants").[1] Specifically, the Myerses allege the Defendants are (1) vicariously liable for the acts of the employees of their independent contractors under the non-delegable duty doctrine, (2) vicariously liable for the acts of their own employees under the doctrine of respondeat superior, and (3) liable as premises owners. The Defendants each moved for summary judgment, and the trial court partially granted each motion. On the motion of all parties, the trial court's orders were certified for interlocutory appeal and this court accepted jurisdiction and consolidated the appeals under a single cause number, designating the Myerses as Appellants/Cross-Appellees[2] and the Defendants as Appellees/Cross-Appellants.

[2] On appeal, the Myerses argue the trial court erred in granting summary judgment in favor of the Defendants on the Myerses' vicarious liability claim

---

[1] Bremen and Mastic are premises owners.

[2] The Indiana Trial Lawyers Association filed an amicus curiae brief aligned with the Myerses.

under the non-delegable duty doctrine and premises liability claim; on cross-appeal, the Defendants argue the trial court erred in denying their motions for summary judgment on the Myerses' respondeat superior claim. Therefore, we consolidate and restate the issues before us as whether the trial court erred in granting in part and denying in part the Defendants' motions for summary judgment. We conclude: (1) the trial court erred in granting the Defendants summary judgment on the Myerses' vicarious liability claim pertaining to the negligence of independent contractors, (2) the trial court did not err in denying the Defendants summary judgment on the Myerses' respondeat superior claim, and (3) the trial court erred in granting the Defendants summary judgment on the Myerses' premises liability claim. We therefore affirm in part, reverse in part and remand for further proceedings on the Myerses' claims.

## Facts and Procedural History

[3] Between 1961 and 1980, Koontz-Wagner Electric ("Koontz") employed Larry as an electrician. During this time, the Defendants hired Koontz as an independent contractor to perform electrical work at the Defendants' facilities. While working at the Defendants' facilities, Larry worked alongside the Defendants' employees as well as the employees of other independent contractors hired by the Defendants. As an electrician, Larry's duties generally included installing and maintaining wire, conduit, light fixtures, transformers, junction boxes, and circuit breakers. In carrying out these duties, Larry occasionally worked near asbestos insulation and with products containing

asbestos. Larry was not warned of the dangers associated with asbestos exposure. In addition, he was neither trained nor hired to handle asbestos, and he did not wear any protective gear. Larry claims he was exposed to asbestos by inhaling asbestos dust as a result of the Defendants' failure to maintain their premises in reasonably safe condition, and as a result of the acts of the Defendants' employees and the acts of other independent contractors' employees.[3] In the 1990s, Larry learned asbestos could be dangerous. In 2014, doctors diagnosed Larry with malignant pleural mesothelioma, citing Larry's exposure to asbestos.

[4]  Following Larry's diagnosis, the Myerses filed a complaint naming nearly forty defendants, including Bremen and Mastic. In the complaint, the Myerses alleged the Defendants negligently hired their independent contractors and were vicariously liable as principals and further liable as premises owners. As to the vicarious liability claims, the Myerses alleged the Defendants' own employees and the employees of their independent contractors negligently exposed Larry to asbestos. The Myerses do not allege Larry's employer, Koontz, is negligent, nor do they allege the Defendants negligently hired Koontz. To be clear, the Myerses only claim the Defendants' employees and independent contractors negligently exposed Larry to asbestos. As to the premises liability claim, the

---

[3] In their Joint Brief of Appellees/Cross-Appellants ("Appellees' Brief"), the Defendants note "Bremen does not concede that asbestos was on their premises. However, for the purposes of summary judgment and this appeal, none of the factual disputes identified by [Larry] are material or determinative to the outcome, and should be assumed to be as [Larry] alleges." Appellees' Brief at 9 n.3. For the purposes of this appeal, we therefore assume Larry was exposed to asbestos while working at the Defendants' facilities.

Myerses alleged the Defendants knew or should have known the dangers associated with asbestos, failed to warn Larry of the danger, and therefore failed to maintain the premises in a reasonably safe condition.

[5] The Defendants then each moved for summary judgment on all three claims, arguing they could not be held vicariously liable under respondeat superior or the non-delegable duty doctrine because Larry was an employee of an independent contractor injured by the very condition he was employed to address and further arguing they could not be held liable as premises owners because they did not have superior knowledge of the risks associated with asbestos. In two separate orders, the trial court—relying primarily upon our supreme court's decision in *PSI Energy, Inc. v. Roberts*, 829 N.E.2d 943 (Ind. 2005), *abrogated in part by Helms v. Carmel High Sch. Vocational Bldg. Trades Corp.*, 854 N.E.2d 345 (Ind. 2006)—concluded as a matter of law the Defendants could not be held liable for the acts of their independent contractors under the non-delegable duty doctrine and could not be held liable as premises owners and entered partial summary judgment in favor of the Defendants on those two claims. In denying summary judgment on the respondeat superior claim, however, the trial court concluded a genuine issue of material fact existed as to whether the acts of the Defendants' employees exposed Larry to asbestos. This appeal and cross-appeal ensued.

# Discussion and Decision

# I. Standard of Review

When we review a grant or denial of a motion for summary judgment, our standard of review is the same as it is for the trial court. *Knighten v. E. Chi. Hous. Auth.*, 45 N.E.3d 788, 791 (Ind. 2015). The moving party carries the burden of showing there are no genuine issues of material fact and it is entitled to judgment as a matter of law. *Id.* In Indiana, unlike federal practice, the moving party will not prevail by merely showing the party carrying the burden of proof lacks evidence on a necessary element. *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014). Rather, "we impose a more onerous burden: to affirmatively 'negate an opponent's claim.'" *Id.* (quoting *Jarboe v. Landmark Cmty. Newspapers of Ind., Inc.*, 644 N.E.2d 118, 123 (Ind. 1994)). If the moving party carries its burden, then the non-moving party must present evidence establishing the existence of a genuine issue of material fact. *Knighten*, 45 N.E.3d at 791. In deciding whether summary judgment is proper, we consider only the evidence the parties designated to the trial court. *See* Ind. Trial Rule 56(C), (H). We construe all factual inferences in favor of the non-moving party and resolve all doubts regarding the existence of a material issue against the moving party. *Knighten*, 45 N.E.3d at 791. Indiana's heightened summary judgment standard "consciously errs on the side of letting marginal cases proceed to trial on the merits, rather than risk short-circuiting meritorious claims." *Hughley*, 15 N.E.3d at 1004. "In negligence cases, summary judgment is rarely appropriate. This is because negligence cases are particularly fact sensitive and are governed by a standard of the objective reasonable person—

one best applied by a jury after hearing all of the evidence." *Rhodes v. Wright*, 805 N.E.2d 382, 387 (Ind. 2004) (internal citations and quotations omitted).

## II. Vicarious Liability

[7] Generally, a plaintiff claiming negligence must show a duty owed to the plaintiff by the defendant, a breach of that duty, and a compensable injury proximately caused by the breach. *Kroger Co. v. Plonski,* 930 N.E.2d 1, 6 (Ind. 2010). "Absent a duty there can be no negligence or liability based upon the breach." *Id.* Vicarious liability creates "indirect legal responsibility" whereby "a court can hold a party legally responsible for the negligence of another, not because the party did anything wrong but rather because of the party's relationship to the wrongdoer." *Sword v. NKC Hosps., Inc.*, 714 N.E.2d 142, 147 (Ind. 1999) (citation omitted). Courts employ various legal doctrines to hold people vicariously liable, including the non-delegable duty doctrine and the doctrine of respondeat superior. *Id.*

[8] The Myerses brought vicarious liability claims against the Defendants alleging the Defendants were liable for the negligence of the employees of their independent contractors under the non-delegable duty doctrine and for the negligence of their employees under respondeat superior. In partially granting the Defendants' motion for summary judgment on the vicarious liability claims, the trial court concluded the Defendants did not owe a duty to Larry with respect to the negligence of the Defendants' independent contractors' employees, but did owe a duty to Larry with respect to the negligence of the

Defendants' own employees. On appeal, much of the parties' briefs are dedicated to arguing the proper interpretation and application of our supreme court's decision in *Roberts*, which we address below. The parties agree Larry was an employee of Koontz, Koontz was hired to perform electrical work at the Defendants' facilities, and Larry worked alongside other independent contractors' employees and the Defendants' employees while on the Defendants' premises. *See* Appellees' Br. at 9. The parties dispute, however, whether the Defendants owed Larry, the employee of an independent contractor, a duty of care to protect him from the negligent acts of their employees and their independent contractors' employees. Whether a duty exists is question of law, but determining whether a duty exists may be dependent upon underlying facts that must be resolved by the trier of fact. *BSA Constr. LLC. v. Johnson*, 54 N.E.3d 1026, 1029 (Ind. Ct. App. 2016), *trans. denied*.

## A. Holding a Principal Liable for Independent Contractor Negligence – Non-Delegable Duty

[9] "In Indiana, the long-standing general rule has been that a principal is not liable for the negligence of an independent contractor." *Bagley v. Insight Commc'ns Co., L.P.*, 658 N.E.2d 584, 586 (Ind. 1995). However, Indiana recognizes the non-delegable duty doctrine, which provides five exceptions to the general rule of non-liability:

> (1) where the contract requires the performance of intrinsically dangerous work; (2) where the principal is by law or contract charged with performing the specific duty; (3) where the act will create a nuisance; (4) where the act to be performed will probably

cause injury to others unless due precaution is taken; and (5) where the act to be performed is illegal.

*Id.* Our supreme court explained the rationale for these exceptions:

> The duties associated with Indiana's five exceptions are considered non-delegable, and an employer will be liable for the negligence of the contractor, because the responsibilities are deemed "so important to the community" that the employer should not be permitted to transfer these duties to another.
>
> * * *
>
> The exceptions encourage the employer of the contractor to participate in the control of work covered by the exceptions in order to minimize the risk of resulting injuries.

*Id.* at 587-88 (citation omitted); *see also Carie v. PSI Energy, Inc.*, 715 N.E.2d 853, 855 (Ind. 1999) ("The exceptions reflect the notion that, in certain circumstances, the employer is in the best position to identify, minimize, and administer the risks involved in the contractor's activities.") (citation and internal quotation marks omitted). In their complaint, the Myerses allege the Defendants are vicariously liable under the intrinsically dangerous and due precaution exceptions, and unless one of the exceptions applies, the general rule of non-liability dictates the Defendants do not owe Larry a duty of care. However, even if a plaintiff can establish the applicability of either the first or fourth exception to the general rule of non-liability, a principal owes no duty of care to an employee of an independent contractor if (1) there is no allegation

the principal negligently selected its independent contractors,[4] and (2) the facts establish the employee was injured by the very condition he was employed to address. *See Roberts*, 829 N.E.2d at 953, 957; *see also Helms*, 854 N.E.2d at 346 (limiting the *Roberts* holding to only the first and fourth exceptions to the general rule of non-liability).

### 1. Intrinsically Dangerous Exception

[10] The intrinsically dangerous exception holds principals, such as the Defendants, liable for the negligence of their independent contractor if the contracts require performance of intrinsically dangerous work. *See Roberts*, 829 N.E.2d at 953-54. The exception is "normally associated with strict liability and does not require negligence on the part of the contractor" and only "imposes liability for activities that are dangerous by nature, not merely because they are carried out in a risky manner." *Id.* at 954. "If proper precautions can minimize the risk of injury, then the activity is not intrinsically dangerous." *Id.* at 955. Even if the activity is intrinsically dangerous, however, a principal cannot be held liable for an injury sustained as a result of an intrinsically dangerous activity if the individual was injured by the very condition he was employed to address. *See generally id*.

---

[4] Here, we note the Myerses allege the Defendants negligently hired their independent contractors. The Defendants do not attempt to negate this claim and we therefore do not address it. As discussed below, the Defendants' sole contention in defense of the Myerses' claims is that they cannot be held liable for Larry's injuries because he was injured by the very condition he was employed to address.

[11] In *Roberts*, Roberts installed and serviced asbestos insulation for at least twenty-four years while working as an employee of Armstrong Contracting and Supply Company ("ACandS"); PSI hired ACandS, an independent contractor, to perform work at PSI's facilities, and as a result, Roberts often worked with and around asbestos at PSI's facilities. 829 N.E.2d at 950. Roberts knew he was working with asbestos insulation and could recognize asbestos on sight. In addition to performing his own work as an employee of ACandS, Roberts was also exposed to asbestos as a result of the acts of PSI's employees and the employees of PSI's independent contractors. Roberts did not take any precautions to protect himself from asbestos exposure and only discovered the risks associated with asbestos several years after completing his work at PSI. After being diagnosed with mesothelioma, Roberts sued PSI under the theories of vicarious and premises liability and received a general jury verdict.

[12] Our supreme court was tasked with determining whether the evidence was sufficient to support the jury's verdict. The court first addressed whether recovery under the intrinsically dangerous exception was supported by the evidence. Roberts argued asbestos is intrinsically dangerous, whereas PSI disagreed, arguing the evidence at trial established proper precautions could have minimized Roberts's exposure. The court concluded the evidence did not support recovery under the intrinsically dangerous exception because testimony at trial indicated proper precautions could have minimized Roberts's risk of exposure. *See id*. at 954-55. However, for a second and independent reason, the court concluded Roberts could not prevail because "working with asbestos

is not intrinsically dangerous such that anyone hiring a contractor to address it incurs strict liability for injuries sustained from exposure to it." *Id*. at 955.

[13] The Myerses claim the Defendants hired independent contractors to perform intrinsically dangerous work, namely working with or around asbestos, that in turn exposed Larry to asbestos. In its attempt to negate the Myerses' claim, the Defendants rely on *Roberts* and argue (1) the evidence establishes proper precautions could have minimized Larry's exposure, and (2) working with asbestos is not intrinsically dangerous as a matter of law.

[14] As to the first argument, the Defendants do not designate evidence, and we find none in the record, indicating proper precautions could have minimized Larry's exposure to asbestos. However, we agree with the Defendants' second argument that *Roberts* also makes clear working with asbestos is not intrinsically dangerous as a matter of law. *See id*. Therefore, the Myerses cannot invoke the intrinsically dangerous exception.

### 2. Due Precaution Exception

[15] Under the due precaution exception to the general rule of non-liability, a principal may be held liable for the negligence of an independent contractor where the work to be performed will probably cause injury to others unless due precaution is taken. *McDaniel v. Bus. Inv. Grp., Ltd.*, 709 N.E.2d 17, 22 (Ind. Ct. App. 1999), *trans. denied*. "The essence of this exception is the foreseeability of the peculiar risk involved in the work and of the need for special precautions." *Id*. (citation omitted). A principal's liability will only be established when, at

the time of contracting, the principal should have foreseen an injury to others was likely to happen.  *Id*.

Application of this exception requires review of several elements, including a peculiar risk; the principal's foreseeability of that risk; and an injury consistent with the peculiar risk.[5]  *Id*.  A peculiar risk is "the risk of a particularized harm specific to the work being performed or the conditions under which it is performed."  *Id*.  "[T]he exception applies only when the risk involved is something more than the routine and predictable hazards generally associated with a given occupation: it must be a risk unique to the circumstances of a given job."  *Id*.

In *Roberts*, Roberts contended the evidence supported a finding that PSI was liable for his injuries under the due precaution exception.  Specifically, he claimed PSI hired his employer, ACandS, to perform asbestos work and such work created a peculiar risk that those performing the work, such as Roberts, would contract an asbestos-related illness.  PSI contended exposure to asbestos materials at PSI's facilities did not present a peculiar risk to an asbestos worker who worked with and around asbestos materials on a daily basis in the normal course of his trade.  The court concluded the facts did not establish PSI created "unusual risks as applied to an *insulator*," reasoning Roberts's job was to install and maintain asbestos insulation and therefore the risk of him being exposed to

---

[5] The Defendants do not address the foreseeability and injury elements in their motions for summary judgment or on appeal.

asbestos, regardless of the location of his work, was the always the same. *Roberts*, 829 N.E.2d at 956 (emphasis added). Stated differently, because Roberts was injured by the very condition he was employed to address, asbestos work did not create a peculiar risk of harm as applied to him. The court elaborated, "At most, PSI created a quantitatively higher risk, but not a risk unique to PSI, and not a risk requiring qualitatively different precautions from those generally associated with asbestos." *Id*.

[18] Here, the Myerses claim asbestos work creates a peculiar risk to others, namely electricians and other independent contractors who are exposed to asbestos dust and contract asbestos-related illnesses when working in the vicinity of asbestos. The Defendants counter this case is analogous to *Roberts*, arguing Larry was injured by the very condition he was employed to address and therefore the asbestos work did not create a peculiar risk requiring different precautions than generally associated with electrical work. We must therefore determine whether Larry was injured by the very condition he was employed to address. We conclude the evidence does not establish he was.

[19] Roberts was injured by the very condition he was employed to address because he was exposed to asbestos while performing asbestos work. Regardless of where Roberts worked, the risk of being exposed to asbestos and contracting asbestos-related diseases was the same. Therefore, PSI could not be held liable for failing to take different precautions than those generally taken by asbestos insulators. The evidence here indicates the Defendants hired Koontz to perform electrical work, not asbestos work. While performing electrical work,

Larry installed and maintained electrical wire, conduit, light fixtures, transformers, junction boxes, and circuit breakers. Unlike the defendants in *Roberts*, the Defendants here have not designated sufficient evidence to indicate Larry's risk of being exposed to asbestos was common among electricians or across workplaces. In addition, there is a factual dispute as to whether Larry was commonly exposed to asbestos during the normal course of his trade. We therefore cannot accept the Defendants' argument that the asbestos work being conducted on their premises did not create a peculiar risk of harm to those *not hired to perform asbestos work*, such as Larry. We conclude a genuine issue of material fact exists as to whether Larry was injured by the very condition he was employed to address and whether asbestos work on the Defendants' premises created a peculiar risk of harm as applied to Larry, an electrician. The due precaution exception to the general rule of non-liability is available to the Myerses.

[20]     In sum, the Defendants attempt to negate the Myerses' claim by arguing they owe no duty of care because asbestos work is not intrinsically dangerous as a matter of law and Larry was injured by the very condition he was employed to address.[6] We conclude—consistent with *Roberts*—asbestos work is not intrinsically dangerous. We further conclude, however, the Defendants have not designated sufficient evidence to establish Larry was injured by the very

---

[6] We emphasize the Defendants do not attempt to negate the questions of breach and proximate causation. Those questions must be resolved by the trier of fact.

condition he was employed to address. There is a genuine issue of material fact as to whether asbestos work created a peculiar risk of harm to Larry, and those similarly situated, of being exposed to asbestos. As it stands, the due precaution exception to the general rule of non-liability may be applicable. The determination of whether a duty exists in this case is dependent upon underlying facts that must be resolved by the trier of fact. *See BSA Const. LLC.*, 54 N.E.2d at 1026. Accordingly, the trial court erred in granting the Defendants summary judgment on the Myerses' non-delegable duty claim.

## B. Holding a Principal Liable for Its Own Employee Negligence – Respondeat Superior

[21] In denying summary judgment to the Defendants on the Myerses' respondeat superior claim, the trial court concluded a genuine issue of material fact existed as to whether the Defendants' employees exposed Larry to asbestos. "Under respondeat superior, an employer, who is not liable because of his own acts, can be held liable for the wrongful acts of his employee which are committed within the scope of employment." *Sword*, 714 N.E.2d at 148 (citation and internal quotation marks omitted).

[22] On appeal, the Defendants rely on *Roberts* and argue they do not, as a matter of law, owe a duty to an employee of an independent contractor who is injured by the very condition he is employed to address.[7] As noted above, the designated

---

[7] The Defendants also argue the Myerses are precluded from seeking relief because the Myerses did not demonstrate a viable claim against the Defendants' employees. In support of their contention, the

evidence does not undisputedly establish Larry was injured by the very condition he was employed to address. We therefore need not address whether *Roberts* does, in fact, bar an employee of an independent contractor who is injured by the very condition he is employed to address from seeking relief under respondeat superior. The Defendants owe Larry a duty of care under respondeat superior and a genuine issue of material fact exists as to whether Larry was exposed to asbestos as a result of the acts of the Defendants' employees. The trial court did not err in denying the Defendants summary judgment on this claim.

## III. Premises Liability

[23]     "Generally, the owner of property has no duty to furnish the employees of an independent contractor a safe place to work in the broad sense as the phrase is applied to an employer." *Merrill v. Knauf Fiber Glass GmbH*, 771 N.E.2d 1258, 1264 (Ind. Ct. App. 2002), *trans. denied*. The landowner must, however, generally maintain the premises in a reasonably safe condition for business invitees, which includes independent contractors and the contractors'

---

Defendants cite only to *Davis v. Cent. Rent-A-Crane, Inc.*, 663 N.E.2d 1177, 1179 (Ind. Ct. App. 1996), for the proposition "[a]n employer cannot be held liable under respondeat superior unless a claim can be maintained against the employee." *See* Appellees' Br. at 23. In their complaint, the Myerses alleged the Defendants' employees negligently exposed Larry to asbestos while they installed, removed, maintained, demolished, replaced, cleaned, tested, labeled, and surveyed areas where asbestos was present. Further, the Myerses alleged the employees were acting within the scope of their employment. In their motions for summary judgment, the Defendants did not designate any evidence indicating, nor did they argue, the Myerses could not maintain a viable claim against the Defendants' employees. Given our standard of review, the Defendants' argument fails.

employees. *Roberts*, 829 N.E.2d at 957. The Restatement (Second) of Torts § 343 (1965) explains this duty:

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
>
>> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
>>
>> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
>>
>> (c) fails to exercise reasonable care to protect them against the danger.

In addition, Restatement (Second) of Torts § 343A(1), which is meant to be read in conjunction with Section 343, *see Roberts*, 829 N.E.2d at 957-58, states, "A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness." "The word 'known' means knowledge of the existence of the condition or activity itself and also appreciation of the danger it involves." *Merrill*, 771 N.E.2d at 1265. In addition, a possessor of land "ordinarily has no liability to an independent contractor or the contractor's employees for injuries sustained while addressing a condition as to which the landowner has no superior knowledge." *Roberts*, 829 N.E.2d at 961.

[24] The comparative knowledge of a landowner and an invitee, such as Larry, is not a factor in assessing whether the landowner owes a duty of care; rather, such a fact is relevant in assessing whether the landowner breached its duty. *Rhodes*, 805 N.E.2d at 388. "The determination of whether a breach of duty occurred is a factual question requiring an evaluation of the landowner's conduct with respect to the requisite standard of care. In this factual assessment, the issue of the landowner's and the invitee's comparative knowledge becomes relevant." *Roberts*, 829 N.E.2d at 959 (citation omitted). In other words, in determining whether a landowner breached its duty, we consider the following factors: (1) the purpose and intent of the invitation and (2) the relative knowledge of the parties.[8] *Merrill*, 771 N.E.2d at 1265.

[25] In their motion for summary judgment, and again here on appeal, the Defendants do not attempt to negate the Myerses' claim under the Restatement. Rather, the Defendants rely on *Roberts* and contend they cannot be found to have breached their duty of care because Larry was injured by the very condition he was employed to address, and because there is no evidence the

---

[8] Although the Defendants do not rely on the Restatement in arguing they are entitled to judgment as a matter of law, we note the evidence establishes the purpose for Larry being on the Defendants' premises was to perform electrical work. As to the comparative knowledge, the evidence establishes Larry only knew of the presence of asbestos, he did not know the dangers associated with asbestos, but claims the Defendants did have, or should have had, knowledge of the dangers and failed to warn Larry. The Defendants do not designate evidence indicating they did not have, or should not have had, knowledge of the dangers associated with asbestos. Therefore, we are left to accept the Myerses' allegation as true and conclude the Defendants have not designated evidence sufficient to negate the Myerses' claim under the Restatement.

Defendants possessed superior knowledge of the risks associated with asbestos, the Myerses' claim fails. We disagree.

[26] *Roberts* requires a showing that a landowner has superior knowledge of the dangerous condition on the premises *only* when an employee of an independent contractor is injured by the very condition he was employed to address. 829 N.E.2d at 961. We therefore agree with Defendants' assertion that *Roberts* recognizes a common law exception to the Restatement in situations where the employee of an independent contractor is injured by the very condition he was employed to address. We disagree, however, the exception is applicable in this case. As noted above, there is a genuine factual dispute as to whether Larry was injured by the very condition he was employed to address. Therefore, the Defendants' reliance on *Roberts* in this respect is premature and their liability is not limited to only the situation where they had superior knowledge of the asbestos danger.

[27] The Defendants did not designate evidence sufficient to negate the Myerses' premises liability claim.[9] Accordingly, the trial court erred in granting the Defendants summary judgment on this claim.

---

[9] We further note, even assuming Larry was injured by the very condition he was employed to address, the Defendants' argument still fails because they have not designated evidence negating the Myerses' claim they possessed superior knowledge. In fact, there is no evidence in the record indicating whether any of the parties had any knowledge of the risks associated with asbestos.

# Conclusion

Indiana's summary judgment standard carries with it a heightened burden for the moving party, and in negligence cases, summary judgment is rarely appropriate. As the moving party, the Defendants were required to designate evidence sufficient to negate the Myerses' claims. The Defendants did not meet this burden. We conclude there is a genuine issue of material fact as to whether the Defendants can be held liable for the negligent acts of their independent contractors under one of the exceptions to the non-delegable duty doctrine, and the trial court erred in granting summary judgment to Defendants on this vicarious liability claim. In addition, the Defendants can be held liable for the negligent acts of their own employees, and the trial court did not err in denying the Defendants summary judgment on the Myerses' respondeat superior claim. As to the premises liability claim, there is a genuine issue of material fact as to whether the Defendants can be liable for failure to maintain their premises in a reasonably safe condition, and the trial court erred in granting the Defendants summary judgment on that claim. In sum, Defendants are not entitled to summary judgment on any of the Myerses' claims, and we accordingly affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

Affirmed in part, reversed in part, and remanded.

Barnes, J., and Altice, J., concur.