Mary SWIFT, Appellant–Plaintiff,

v.

**SPEEDWAY SUPERAMERICA LLC., Appellee–Defendant.**

No. 49A02–0607–CV–577.

Court of Appeals of Indiana.

Feb. 26, 2007.

Ronald E. Weldy, Indianapolis, IN, Attorney for Appellant.

William R. Groth, Indianapolis, IN, Attorney for Appellee.

## OPINION

HOFFMAN, Senior Judge.

Plaintiff–Appellant Mary Swift ("Swift") appeals from the trial court's order granting summary judgment in favor of Defendant–Appellee Speedway Superamerica, LLC., ("Speedway") and denying Swift's motion for summary judgment. We affirm.

Swift was an at-will employee of Speedway from May of 1998 until March 10, 2004. Swift was a store manager at the time of her resignation earning a weekly salary of $716.00. Speedway pays its store managers weekly salaries, and they also are eligible for bonuses under Speedway's Store Manager Bonus Program.

After her resignation, Swift filed a complaint against Speedway under Indiana's Wage Claim Statute, Ind.Code § 22–2–9–1 *et seq.*, and Indiana's Wage Payment Statute, Ind.Code § 22–2–5–1 *et seq.* In her complaint, filed on August 29, 2004, Swift sought reimbursement and damages for sick pay and store manager bonuses she alleged were owed to her by Speedway. Speedway denied Swift's allegations, and filed a motion for summary judgment on March 8, 2005. On May 19, 2005, Swift filed a cross-motion for summary judgment. After all of the briefs in support and opposition of the motions were filed, the trial court held oral argument on those motions on December 16, 2005. The trial court granted Speedway's motion for summary judgment and denied Swift's cross-motion for summary judgment on February 27, 2006. Swift filed a motion to correct error on March 29, 2006. The trial court held oral argument on the motion on June 8, 2006. On June 12, 2006, the trial court denied the motion to correct error.

The purpose of summary judgment is to terminate litigation about which there can be no factual dispute and which may be determined as a matter of law. *Williams v. Riverside Community Corrections Corp.*, 846 N.E.2d 738, 743 (Ind.Ct.App. 2006). Our standard of review is the same as that of the trial court. Summary judgment is appropriate only where the evidence shows there is no genuine issue of

material fact and the moving party is entitled to judgment as a matter of law. *Id.* All facts and reasonable inferences drawn from those facts are construed in favor of the non-moving party. *Id.* The trial court's order granting and/or denying summary judgment is cloaked with a presumption of validity. *Id.* A party appealing from an order granting summary judgment has the burden of persuading the court on appeal that the decision was erroneous. *Id.*

At issue in this appeal is Swift's entitlement to payment for store manager bonuses for January and February 2004. Swift does not pursue her claim for sick pay. Swift claims that her store manager bonuses were wages. She contends that the bonuses are present compensation that can not be forfeited absent a valid contract between her and Speedway.

The Indiana Wage Payment Statute provides as follows:

(a) Every person, firm, corporation, limited liability company, or association, their trustees, lessees, or receivers appointed by any court, doing business in Indiana, shall pay each employee at least semimonthly or biweekly, if requested, the amount due the employee. The payment shall be made in lawful money of the United States, by negotiable check, draft, or money order, or by electronic transfer to the financial institution designated by the employee. Any contract in violation of this subsection is void.

(b) Payment shall be made for all wages earned to a date not more than ten (10) days prior to the date of payment. However, this subsection does not prevent payments being made at shorter intervals than specified in this subsection, nor repeal any law providing for payments at shorter intervals. However, if an employee voluntarily leaves employment, either permanently or temporarily, the employer shall not be required to pay the employee an amount due the employee until the next usual and regular day for payment of wages, as established by the employer. If an employee leaves employment voluntarily, and without the employee's whereabouts or address being known to the employer, the employer is not subject to section 2 of this chapter until:

(1) ten (10) days have elapsed after the employee has made a demand for the wages due the employee; or

(2) the employee has furnished the employer with the employee's address where the wages may be sent or forwarded.

Ind.Code § 22–2–5–1.

The Wage Payment Statute does not provide a definition of "wages" as that term is used in the statute. However, case law provides guidance in determining the substance of compensation which has been the subject of controversy.

■ Present compensation refers generally to the hourly or salaried wages of an employee, and it commonly constitutes the consideration underlying the employment contract. *Williams,* 846 N.E.2d at 743–744. The defining characteristic of present compensation, with regard to an employee's hourly or salaried wage, is that it vests upon the performance of labor without any additional requirements. *Id.* at 744. An employee is immediately entitled to a share of his present compensation when labor is performed. *Id.*

■ Deferred compensation, vests upon some requirement in addition to, or apart from, the performance of labor. *Id.* That additional requirement might be the passage of time, the attainment of a certain age by an employee, or some other varia-

ble spelled out in a policy or by agreement of the parties. *Id.*

■ Present compensation indefeasibly vests upon the performance of labor, and can never be forfeited by an employee absent a contractual agreement to the contrary. *Id.* Deferred compensation, however, is subject to forfeiture, unless it arises via contract as opposed to an employer's policy, and the contract lacks any express terms providing for forfeiture. *Id.*

■ Deferred payment of compensation that accrued during an employee's tenure is a wage. *Wank,* 740 N.E.2d at 912. Common forms of deferred compensation include various forms of PTO, pension benefits, retirement savings plans, stock options, healthcare plans, annuities, etc. *Williams,* 846 N.E.2d at 747. Unlike present compensation, which is generally provided for by contract, deferred compensation may be provided for by contract, by policy, or a combination of the two. *Id.*

The Speedway Store Manager Bonus Program states as follows regarding eligibility:

ELIGIBILITY

1. The eligible employee must be the Store Manager of Record (i.e., "chief" of the store's organization as shown in SAP) on the first day of the month in order to earn Bonus Credits for that month.

AND

2. The eligible employee must be employed at the end of the second month following the month in which the bonus was earned in order for Bonus Credits to have any value and be eligible for payment. The only exceptions are Store Managers who retire or die, in which case bonuses will be paid.

AND

3. If a store is cited by a governmental agency for having violated legal requirements for selling alcohol or tobacco products ("cited" defined as SSA being subject to penalties such as fines, license suspension or revocation), the Store Manager will not be eligible to receive payment for the next monthly Store Manager Bonus for which he/she would otherwise be eligible.

PAYMENT:

Provided that a Store Manager meets the above outlined eligibility requirements, bonus credits will be assigned a value of $1.00 per credit, and payment will be made with the second paycheck in the third month following the month in which the bonus was earned. For example, to earn a January Bonus, the Manager must be the Manager of Record on the first day of January and must be employed on March 31; payment will be made with the second paycheck in April, provided that there were no alcohol or tobacco citations during the month.

Appellant's App. p. 26.

■ After examining the language of Speedway's Store Manager Bonus Program and the case law on this matter, it is clear that the trial court correctly determined that, while Swift's January and February 2004 bonuses were wages, they were deferred compensation.

Swift's argument that the bonuses were present compensation is unavailing here. While the bonuses were based in part upon performance criteria, the store managers also had to be employed as the store manager of record on the first day of the month in order to be eligible for bonus credits that month, and the store managers had to be employed at the end of the second month following the month in

which the bonus was earned, in order for a monetary value to be assigned to the bonus credits, and for the bonus credits to be eligible to be paid. Therefore, unlike present compensation which vests upon performance of labor without any other requirement, the bonuses vested upon the additional requirements of passage of time and continued employment with Speedway. The resolution of this part of the issue is key to Swift's recovery of any money from Speedway. Because the bonus was deferred compensation, it was a wage that could be forfeited.

No contract existed between Swift and Speedway regarding the store manager bonuses. Therefore, Speedway's policy on store manager bonuses controls on the issue of whether Swift's entitlement to payment for those bonuses had vested.

The Store Manager Bonus Program states that the store manager must be 1) the store manager of record on the first day of the month during which bonus credits can be earned, 2) still employed at the end of the second month following the month during which bonus credits were earned, and 3) the store must not be cited by a governmental agency for a violation regarding the sale of tobacco or alcohol. Appellant's App. p. 26. The example provided in the bonus program manual illustrates why Swift is not entitled to compensation for the January and February bonus credits. The example is as follows:

> For example, to earn a January Bonus, the Manager must be the Manager of Record on the first day of January and must be employed on March 31; payment will be made with the second paycheck in April, provided there were no alcohol or tobacco citations during the month.

Appellant's App. p. 26.

Swift resigned from Speedway on March 10, 2004. Swift needed to be employed on March 31, 2004 in order to be eligible for payment of the January bonus. Swift needed to be employed on April 31, 2004 in order to be eligible for payment of the February bonus. Therefore, pursuant to the terms of the Store Manager Bonus Program, Swift was not eligible for compensation for the bonuses she seeks. Swift forfeited the potential compensation for bonus credits by resigning on March 10, 2004. The trial court did not err by granting summary judgment in favor of Speedway.

Affirmed.

BARNES, J., and MATHIAS, J., concur.