**FILED**

Mar 19 2019, 9:27 am

**C L E R K**
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

Mark J. Crandley
Barnes & Thornburg, LLP
Indianapolis, Indisana

ATTORNEYS FOR APPELLEE

Ryan P. Sink
Indianapolis, Indiana

AMICUS CURIAE
Probation Officers Professional
Association
Fred Anthony Paganelli
Stephanie L. Grass
Thomas D. Perkins
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Hendricks County, Indiana, *et al.*,

*Appellants-Defendants,*

v.

Gwyn L. Green,

*Appellee-Plaintiff.*

March 19, 2019

Court of Appeals Case No.
18A-PL-2528

Appeal from the Boone Superior
Court

The Honorable Matthew C.
Kincaid, Judge

Trial Court Cause No.
06D01-1711-PL-1416

**Riley, Judge.**

STATEMENT OF THE CASE

Appellants-Defendants, Hendricks County, Indiana (County) and Hendricks County Courts,[1] appeal the trial court's decision on Appellee-Plaintiff's, Gwyn L. Green (Green), motion for judgment on the pleadings, concluding that Green was entitled to a cash payout of her paid-time-off (PTO) as a form or earned wages under Indiana's Wage Payment Statute at the time of her resignation as a probation officer from the Hendricks County Courts.[2]

We affirm.

# ISSUES

The County presents us with two issues on appeal, which we restate as:

(1) Whether the County may decline to pay cash for unused PTO pursuant to Indiana's Wage Payment Statute and in accordance with the County's employee manual; and

(2) Whether the Wage Payment Statute waives sovereign immunity even though the Statute is silent as to whether it applies to government entities.

---

[1] Appellant-Defendant, Hendricks County Courts, filed a notice of non-involvement with this court as it does not have an interest in this appeal. We accepted the notice on January 31, 2018. However, facts with respect to Hendricks County Courts will be included in so far as they are relevant to this appeal.

[2] We acknowledge that the Probation Officers Professional Association of Indiana, Inc. filed an *Amicus Curiae* Brief with this court in support of Green.

# FACTS AND PROCEDURAL HISTORY

[4] Green worked as a probation officer for the Hendricks County Courts from October 1993 until her voluntary resignation on September 29, 2017. At the time of her resignation, Green had accrued 331 hours of unused PTO. Instead of taking the time off, she sought to recover the accumulated hours as a cash payment pursuant to the provisions of the employee manual for the Hendricks County Probation Department, which stated that "[r]egardless of notice given, upon resignation, the Department shall pay for personal time which has accrued not exceeding 420 hours." (Appellant's App. Vol. II, p. 17).

[5] The County maintains that its own employee manual which sets the policies applicable to all County employees is applicable to probation officers. Pursuant to the County's manual, employees are not granted a cash payout for PTO when they resign. Instead, "[a]ccrued PTO will only be paid out upon retirement or disability retirement to eligible employees." (Appellant's App. Vol. II, p. 87). This policy was sent to all County employees and it is undisputed that Green received a copy.

[6] On or about October 6, 2017, the Hendricks County Courts sought an appropriation from the County to pay Green's accrued and unused PTO. The County Council rejected the request, voting 7-0 to deny because "if this payout was awarded, contrary to [the County] Policy Manual, there would be a good argument for other employees to receive the same standing." (Appellant's App. Vol. II, p. 28).

[7] On November 21, 2017, Green filed a Complaint against the County and the Hendricks County Courts, seeking a cash payment of her accumulated PTO pursuant to the Indiana Wage Payment Statute. The County answered the Complaint and moved for summary judgment on February 22, 2018. Green opposed the motion for summary judgment and, on March 9, 2018, moved for judgment on the pleadings, claiming a right to her PTO payment as a matter of law. On June 11, 2018, the trial court denied the County's motion for summary judgment. On September 28, 2018, following a hearing, the trial court entered an Order concluding that Green is "adjudged to be employed by the Hendricks County Courts and entitled to compensation in the principal amount of $11,075.26." (Appellant's App. Vol. II, p. 11). The trial court reached this conclusion holding that "The Hendricks County Courts, and not [the County] (fiscal body), sets the salary and controls the terms, condition, and privileges of Probation Officers. *See* Ind. Code § 11-13-1-1 []; Ind. Code § 11-13-1-8 []; Ind. Code § 36-2-16.5-3[.]" (Appellant's App. Vol. II, p. 9).

[8] The County now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Standard of Review*

[9] On appeal, the County contends that the trial court erred by granting Green's motion for judgment on the pleadings. A judgment on the pleadings pursuant to Indiana Trial Rule 12(C) attacks the legal sufficiency of the pleadings. *Shepherd v. Truex*, 823 N.E.2d 320, 324 (Ind. Ct. App. 2005). In reviewing a

trial court's decision on a motion for judgment on the pleadings, this court conducts a *de novo* review. *Id.* We will affirm the trial court's grant of a Trial Rule 12(C) motion for judgment on the pleadings when it is clear from the face of the pleadings that one of the parties cannot in any way succeed under the operative facts and allegations made therein. *Id.* In addition, when we consider a motion for judgment on the pleadings, we deem the moving party to have admitted "all facts well pleaded, and the untruth of his own allegations which have been denied." *Id.* (quoting *New Trend Beauty Sch., Inc. v. Indiana State Bd. of Beauty Culturist Examiners*, 518 N.E.2d 1101, 1103 (Ind. Ct. App. 1988)). All reasonable inferences are drawn in favor of the nonmoving party and against the movant. *Id.*

[10] When reviewing a Trial Rule 12(C) motion, we may look only at the pleadings and any facts of which we may take judicial notice, with all well-pleaded material facts alleged in the Complaint taken as admitted. *Consol. Ins. Co. v. Nat'l Weather Servs., LLC*, 994 N.E.2d 1192, 1196 (Ind. Ct. App. 2013). "The 'pleadings' consist of a complaint and an answer, a reply to any counterclaim, an answer to a cross-claim, a third-party complaint, and an answer to a third-party complaint." *Id.* "Pleadings" also consist of any written instruments attached to a pleading, pursuant to Ind. Trial Rule 9.2. *Id.*

## II. *Unused PTO*

[11] Indiana has established a system of governmental checks and balances that divides the authority over the courts' administration between the judiciary and

the executive branches. The judiciary is an independent branch of the government and is constitutionally obligated to keep the courts open for the administration of justice. Ind. Const. art. 1 § 12. The power of the judiciary is, therefore of necessity, coequal to its duties. *Knox Co. Council v. State ex. Rel. McCormick*, 29 N.E.2d 405, 408 (Ind. 1940). Because courts are constitutionally obligated to be open and because the operation of a probation office is a court-related function, the courts have the corresponding constitutional power to pay probation officers at a level sufficient to attract and maintain qualified personnel. *Noble Co. Council v. State ex rel. Fifer*, 125 N.E.2d 709,714-17 (Ind. 1955). As such, the Indiana Legislature has determined that "probation officers serve at the pleasure of the courts that appoint them." I.C § 11-13-1-1(c).

[12] The task of adopting rules and regulations prescribing minimum standards applicable to probation officers was assigned by the Legislature to the Board of Directors of the Judicial Conference of Indiana. I.C. § 11-13-1-8(b)(2). Using a central judicial entity with special expertise to establish minimum salary levels for probation officers, rather than having separate determinations in each county, is more efficient and insures fairness and some degree of uniformity in the setting of salaries by trial courts statewide. *Matter of Madison Co. Probation Officers' Salaries*, 682 N.E.2d 498, 501 (Ind. 1997).

[13] However, while the power of appointment and establishment of minimum salary levels fall squarely within the province of the judiciary, our Legislature has also determined that "the salary of a probation officer shall be paid out of the county, city, or town treasury by the county auditor or city controller." I.C.

§ 11-13-1-1(c). "In consultation with (1) at least one (1) judge of a court or division of a court authorized to impose probation; and (2) at least one (1) probation officer; the county, city or town fiscal body shall adopt a salary schedule setting the compensation of a probation officer. The salary schedule must comply with the minimum compensation requirements for probation officers adopted by the judicial conference of Indiana under I.C. § 11-13-1-8." I.C. § 36-2-16.5-3. As such, the county, city, or town fiscal body shall fix the salary of a probation officer based on the salary schedule adopted under this chapter. I.C. § 36-2-16.5-4. "Unless otherwise specified in the salary schedule, a probation officer is entitled to the same benefits, holidays, and hours as other county, city, or town employees." I.C. § 36-2-16.5-5.

[14] Focusing on I.C. § 36-2-16.5-5's promulgation that "a probation officer is entitled to the same benefits" as other county employees, the County contends that the trial court's Order to require the County to make a cash payment of Green's PTO violates the County's policy for its employees, as the County's own employee manual unequivocally prohibits the use of County funds to pay unused PTO when—as in the case before us—an employee resigns. On the other hand, Green characterizes the PTO as a deferred compensation which, pursuant to I.C. § 36-2-16.5-5, is not regulated by the County's employee manual.

[15] "Deferred payment of compensation that accrued during an employee's tenure is a wage." *Swift v. Speedway Superamerica, LLC*, 861 N.E.2d 1212, 1215 (Ind. Ct. App. 2007). "Common forms of deferred compensation include various

forms of PTO, pension benefits, retirement savings plans, stock options, healthcare plans, annuities, etc." *Id.* Unlike present compensation, which is generally provided for by contract, deferred compensation may be provided for by contract, by policy, or a combination of the two. *Id.* In *Die & Mold, Inc. v. Western*, 448 N.E.2d 44, 46-47 (Ind. Ct. App. 1983) (internal quotations omitted), which involved a dispute about vacation time, we concluded, as an issue of first impression, that

> [v]acation pay is in the nature of deferred compensation in lieu of wages earned each week the employee works, and is payable at some later time. An agreement to give vacation pay to employees made before they perform their service, and based upon the length of service and time worked is not a gratuity but rather is in the form of compensation services. And when the services are rendered, the right to receive the promised compensation is vested, as much as the right to receive wages or other forms of compensation.

*See also McCausland v. Walter USA, Inc.*, 918 N.E.2d 420, 427 (Ind. Ct. App. 2009) ("compensated vacation pay is considered a wage and is subject to the provisions of the Wage Payment Statute.") As such, employment compensation and wages are contingent on working, whereas an employment benefit is independent and exclusive of an employee's actual work schedule. Accordingly, as Green's PTO is a deferred compensation which must be considered as part of her wages, her PTO is not subject to the confines of I.C. § 36-2-16.5-5, which by its own explicit terms does not include deferred compensation or wages, and therefore the PTO cannot be regulated by the County's employee manual.

In an effort to bring PTO within the list of benefits regulated by I.C. § 36-2-16.5-5, the County points to the General Assembly's mandate that probation officers must receive at least the minimum salary set by a schedule promulgated by the Judicial Center of Indiana. *See* I.C. §§ 36-2-16.5-3; 11-13-1-8. This minimum salary, as determined by the Judicial Center of Indiana, is "the gross salary paid to a probation officer and does not include the employer's contributions to PERF/retirement program, disability, medical or other insurance programs, or deferred compensation." (Appellant's App. Vol. II, p. 113). The Judicial Center of Indiana categorizes gross salary and deferred compensation as two separate items; at the same time, the definition also distinguishes deferred compensation from an employer's contributions to the employee's benefits of PERF/retirement program, disability, and medical or other insurance programs. Therefore, it is clear that even the Judicial Center of Indiana does not view deferred compensation as an equivalent to employee's benefits.

Moreover, the County's own employee manual belies the fact that probation officers must be treated similar to other County employees. Page (i) of the County's handbook states that:

> while these personnel policies apply to most County employees, they do not apply to all employees. Elected Officials, unless otherwise provided by law, are generally exempt from these policies. Likewise, employees of Hendricks County courts should confirm with their respective court whether they are covered by these policies.

(Appellant's App. Vol. II, p. 45). The Hendricks County Courts' request, seeking an appropriation from the County to pay Green's accrued and unused PTO, clearly signaled that the courts considered the County's PTO policy inapplicable to probation officers, as they are employees of the courts.

[18] As established court employees, probation officers' salaries are fixed by the courts through the Judicial Conference of Indiana and are paid out of the county or city treasury. Because judicial precedents categorize deferred compensation as wages or salary, the determination as to whether deferred compensation can be cashed out falls statutorily within the ambit of the judiciary, as I.C. § 36-2-16.5-5 expressly mandates only benefits to be within the province of the executive branch, *i.e.*, the County. Therefore, we affirm the trial court's Order.[3]

### III. *Sovereign Immunity*

[19] Even though we find that Green has a viable claim and is entitled to a cash payment for PTO, the County now contends that its sovereign immunity under the Wage Payment Statute nevertheless bars Green's claim.

---

[3] The County also maintains that the trial court's Order acts as a mandate of funds without applying the mandate protection of Indiana Trial Rule 60.5. The County is correct that, if the trial court had ordered Green to be paid and the County had refused to pay her, the Trial Rule 60.5 mandate procedure could be employed to order that the funds be paid to Green. However, this is not yet the dispute before us. Rather, here the parties' argument revolves around the applicability of the County's employee manual in light of I.C. § 36-2-16.5-5, and thus the trial court's Order is more akin to a declaratory judgment. Moreover, a mandate ordering a county to release funds must be initiated by a court as there is no private cause of action to compel a mandate of funds. *See* T.R. 60.5; *Knoebel v. Clark Co. Superior Court No. 1*, 901 N.E.2d 529, 533 (Ind. Ct. App. 2009).

[20] A statutory claim against the government exists only when a statute "clearly evinces" the General Assembly's intention to waive sovereign immunity. *Essermann v. Ind. Dep't of Envtl. Mgmt.*, 84 N.E.2d 1185, 1191-92 (Ind. 2017). A presumption exists that the General Assembly did not waive sovereign immunity, and our supreme court in *Esserman* has required a "high bar for overcoming the presumption." *Id.* As such, a statute must contain "an affirmative 'expression' or 'declaration' of the legislature's intention to waive the State's immunity" and requires that there is a "waiver of sovereign immunity only when the statute at issue contains an unequivocal statement that clearly evinces the legislature's intention to subject the State to suit for the specific statutory claims asserted." *Id.* at 1192

[21] Turning to the Wage Payment State, Indiana Code section 22-2-5-1 identifies "[e]very person, firm, corporation, limited liability company, or association, their trustees, lessees, or receivers appointed by any court, doing business in Indiana" as being subject to the provisions of the Statute. Although the Statute appears to be silent with respect to governmental entities or public employees, our supreme court extended in *Naugle v. Beech Grove City Schools*, 864 N.E.2d 1058 (Ind. 2007), the definition of person in I.C. § 22-2-5-1 to encompass "bodies politic and corporate," as defined in I.C. § 1-1-4-17(17). Specifically, in finding that public school entities are subject to claims under the Wage Payment Statute, the *Naugle* court held:

> The Wage Payment Statute applies to '[e]very *person*, firm, corporation, limited liability company, or association, their

trustees, lessees, or receivers appointed by any court, doing business in Indiana . . ..' Indiana Code section 1-1-4-5(17) extends the definition of a 'person' to include 'bodies politic and corporate.' Moreover, Indiana Code section 20-26-2-4 defines a school corporation as 'a local public school corporation established under Indiana law . . .' Thus, Beech Grove is a 'person' and a 'corporation' as these terms are used in the Wage Payment Statute[.]

*Id.* (emphasis added). The *Naugle* holding is consistent with earlier opinions from the court of appeals that assumed, without specific discussions, that the Wage Payment Statute applied to governmental employers. *See Abner v. Dep't of Health of State of Ind. Ex rel. Ind. Soldiers' and Sailors' Children's Home*, 777 N.E.2d 778, 784 (Ind. Ct. App. 2002), *trans. denied*; *Cox v. Town of Rome City*, 764 N.E.2d 242, 249-50 (Ind. Ct. App. 2002); *Schwartz v. Gary Cmty. Sch. Corp.*, 762 N.E.2d 192, 198 (Ind. Ct. App. 2002), *trans. denied*; *Hendershot v. Carey*, 616 N.E.2d 412 (Ind. Ct. App. 1993), *overruled on other grounds by St. Vincent Hosp. and Health Care Ctr. v. Steele*, 766 N.E.2d 699, 703 (Ind. 2002). The failure of the Legislature to change the Statute to exclude governmental employers in light of these decisions supports our supreme court's extended interpretation of the Statute. *See In re Adoption of Infant Child Baxter*, 799 N.E.2d 1057, 1062 (Ind. 2003).

[22] The Wage Payment Statute clearly envisages employees, public or private, as the persons included in the Statute and there is no reason to believe it was the intent of the Legislature to exclude the County from liability under the Statute. County employees rely on their wages to the same extent as employees in the

private sector, and nothing in the Wage Payment Statute supports excluding them from its protection. Accordingly, as it is undeniable that the County is a body politic, it is subject to the Wage Payment Statute and cannot claim sovereign immunity.

## CONCLUSION

[23] Based on the foregoing, we hold that, as court employees, probation officers are entitled to a cash payout of unused PTO in accordance with the Court's employee manual and the County is not entitled to sovereign immunity under the Wage Payment Statute.

[24] Affirmed.

[25] Kirsch, J. and Robb, J. concur